UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIGIT E. TUTTLE,

      Plaintiff                            Civil Action No. 16-11144

v.                                   HON.  PAUL D. BORMAN
                                        U.S. District Judge
                                        HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Brigit E. Tuttle ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Docket #28]  be DENIED and that Plaintiff's motion for summary judgment [Docket #24] be GRANTED to the extent that the case be remanded for further administrative proceedings.

## I.  PROCEDURAL HISTORY

On February 26, 2013, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability as of October 1, 2011

(Tr. 149-155, 156-164). After the initial denial of the claim, Plaintiff filed a timely request for an administrative hearing, held on March 21, 2014 in Detroit, Michigan before Administrative Law Judge ("ALJ") Ronald Herman (Tr. 28). Plaintiff, represented by non-attorney representative Dannelly Smith, testified (Tr. 31-50), as did Vocational Expert ("VE") Gary Sinoa (Tr. 51-54). On July 30, 2014, ALJ Herman found that Plaintiff was not disabled (Tr. 16-24). On November 27, 2015, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the final decision on March 30, 2016.

## II. BACKGROUND FACTS

Plaintiff, born December 19, 1964, was 49 when the ALJ issued his decision (Tr. 24, 149). She completed 12th grade and received training in "domestic services" (Tr. 194). She worked previously as a cashier, cook, and household care provider (Tr. 194). She alleges disability as a result of a stroke, lesions of the spine, fibromyalgia, and breast cancer (in remission) (Tr. 193).

### A.   Plaintiff's Testimony

Plaintiff offered the following testimony:

She last worked on February 27, 2014 (Tr. 31). Prior to her last day of work, she worked anywhere between 20 and 25 hours a week (Tr. 31). She stopped working because her employer "went out of business" but would nonetheless have stopped working at that time due to "tremendous pain" due to migraine headaches and back and leg pain (Tr. 33). She continued working because she had no other income (Tr. 34). Before ceasing work, she

-2-

would have to leave work or was allowed to go home early because pain prevented her from finishing her shift (Tr. 33).

In regard to the back condition, Plaintiff had last undergone steroid injections in July, 2013 (Tr. 35). *The ALJ noted that Plaintiff had undergone a consultative examination in regard to her psychological conditions but had not had the back condition evaluated by a consultative source* (Tr. 37). *He stated that "we'll do a [consultative examination] . . . regarding [the] back. . ."* before issuing a determination (Tr. 37).

Plaintiff resumed her testimony:

She was unable to lift more than 10 pounds or sit or stand for more than 10 minutes (Tr. 37). She did not require the use of a cane (Tr. 37). She took over-the-counter pain medication and Gabapentin for back pain (Tr. 38). She was diagnosed with right breast cancer in 2011 which was currently in remission (Tr. 38). However, a September, 2013 surgery to remove a "big lump" on her left breast had been canceled because the tumor was too close to the chest wall (Tr. 38). In addition to lifting difficulties due to the back problems, she was unable to lift her left arm due to multiple surgeries (Tr. 39).

In response to questioning by her representative, Plaintiff stated that before terminating work as a cashier, her employer permitted her to leave work earlier if required and was in general "very accommodating" (Tr. 40). Back pain, leg numbness, and migraines interfered with her work (Tr. 41). She experienced daily headaches of varying intensity (Tr. 41-43). The headaches/migraines were bad enough to preclude work approximately every

other day (Tr. 43). She coped with the headaches by reclining (Tr. 43). She did not experience leg numbness or back pain until August, 2012 when she experienced a stroke (Tr. 44, 46). As a result of the stroke, she experienced intermittent leg numbness and daily leg pain (Tr. 47-48). She experienced sleep disturbances due to leg pain (Tr. 48).

Plaintiff underwent a radical mastectomy in November, 2011 followed by three followup procedures (Tr. 45). Recovery following the procedures took "months" (Tr. 45). She relied on her employer to allow her to leave work when her pain became overwhelming (Tr. 46). She estimated that she had to leave work twice a week because of pain (Tr. 46). Prior to losing her medical insurance in November, 2013, she took Tramadol (Tr. 49). Her constant pain caused depression and anxiety to the point where she was unable to function (Tr. 50).

### B. Medical Records

### 1. Treating Sources

In October, 2011, Plaintiff received a diagnosis of cancer of the left breast (Tr. 528, 541). The following month, she underwent a mastectomy (Tr. 534, 538). December, 2011 records state that she was prescribed range of motion exercises (Tr. 505). In January, 2012, Ali Athar, M.D. noted a November, 2011 mastectomy with problems with "wound healing" (Tr. 239). He found that Plaintiff would be a "good candidate for implant reconstruction" (Tr. 241). March, 2012 reconstructive surgery was performed without complications (Tr. 246). Imaging studies from the following month showed benign right-side cysts (Tr. 480,

524).  In July, 2012, Plaintiff sought treatment for an infection at the surgical incision site (Tr. 254).  The same month, she underwent the next portion of the reconstructive procedure (Tr. 258).

The following month, Plaintiff experienced a minor stroke characterized by right upper extremity weakness, dizziness and lightheadedness (Tr. 261, 319, 342).   She was discharged (against medical advice) in fair condition (Tr. 339).  A CT and MRA of the head were both unremarkable (Tr. 490-491).  A followup MRI of the brain was negative for abnormalities (Tr. 325, 489).  In September, 2012, neurologist Demian Naghuib, M.D. noted Plaintiff's report of head and neck pain and stiffness with sleep disturbances (Tr. 451).  An MRI of the lumbar spine showed "multilevel disc bulges at C5-C6, C6-C7, and L1-L2 (Tr. 312, 487).  Nerve conduction studies showed mildly decreased conduction velocity of the right median motor nerve but no other abnormalities (Tr. 474, 450).  Followup notes by Patrick Kut, M.D. state that Plaintiff experienced level seven pain on a ten-point scale (Tr. 432).

In October, 2012, Plaintiff was transported by ambulance to the hospital after experiencing a racing pulse following trigger point injections (Tr. 289, 300, 448-449).  Laboratory tests were essentially unremarkable (Tr. 292).  She was discharged in stable condition (Tr. 288, 292).   Dr. Naguib's treating records from later the same month show cervical tenderness and muscle spasms with a diagnosis of fibromyalgia (Tr. 445-446).  The following month, Plaintiff underwent additional trigger point injections after experiencing

severe pain (Tr. 444-445). Dr. Kut's December, 2012 records note level "eight" back pain (Tr. 427). The same month, Dr. Naguib noted Plaintiff's report of migraine headaches and transient right upper extremity weakness but observed full muscle strength (Tr. 441). Trigger point injections were administered without complications (Tr. 438).

In January, 2013, Plaintiff underwent a laparoscopic cholecystectomy, performed without complications (Tr. 266-268, 533). A mammogram performed the following month showed benign findings (Tr. 263, 520). In March, 2013, Plaintiff denied pain from the gallbladder surgery (Tr. 423). Dr. Naguib's records from the same month note "chronic widespread fibromyalgia" and degenerative disc disease of the cervical, thoracic, and lumbar spine (Tyr. 436). Plaintiff reported difficulty walking, sitting, and standing as well as memory loss, confusion, nervousness, depression, insomnia, and anxiety" (Tr. 436). Dr. Naguib prescribed Gabapentin for the symptoms of fibromyalgia (Tr. 436). He noted full muscle strength in all extremities (Tr. 437). The same month, Dr. Naguib administered a epidural steroid injection (Tr. 434). Mastectomy followup records note a decreased range of upper left extremity movement (Tr. 494). The same month, she was diagnosed with frozen shoulder (Tr. 493). Dr. Kut's June, 2013 records note the ongoing condition of fibromyalgia (Tr. 571). An August, 2013 ultrasound of the right breast showed "probably benign findings" (Tr. 557).

## 2. Non-Treating Sources

In April, 2013, Michelle M. Rousseau, Psy.D. performed a psychological consultative examination on behalf of SSA, noting Plaintiff's report of an August, 2012 stroke followed by a number of recent mini strokes (Tr. 543). Plaintiff reported that the strokes were followed by severe headaches and sleep disturbances due to neck, shoulder, and leg pain (Tr. (Tr. 543). She noted a diagnosis of bipolar disorder at the age of 16 following a suicide attempt (Tr. 543). She described her symptoms as lack of motivation and depression (Tr. 543). She reported that she took mood stabilizing drugs (Tr. 544). Dr. Rousseau noted that Plaintiff was independent in activities of daily living, finances, and household chores (Tr. 544). Plaintiff admitted a history of methamphetamine and crack cocaine abuse, but noted that she participated in a residential substance abuse program and attended Narcotics Anonymous for one year (Tr. 545). Dr. Rousseau found that Plaintiff's concentration skills "may be mildly impaired" (Tr. 547). She assigned her a GAF of 62[1] (Tr. 548).

In April, 2013, Natalie Gray, M.D. performed a non-examining assessment of the treating records on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 65). Dr. Gray found that Plaintiff was limited to occasional

---

[1]

GAF scores in the range of 61 to 70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* ("*DSM–IV–TR*"), 34.

climbing of ladders, ropes, or scaffolds but could balance, stoop, kneel, crouch, crawl, and climb ramps or stairs on a frequent basis (Tr. 65-66). Dr. Gray found further that Plaintiff should avoid exposure to hazards such as machinery and heights (Tr. 66).

Based on Dr. Rousseau's findings, in May, 2013, Barbara Jones Smith, Ph.D. performed a non-examining psychological assessment on behalf of the SSA, finding that Plaintiff experienced mild limitation in activities of daily living, no difficulties in social functioning, and mild limitation in concentration, persistence, or pace (Tr. 63).

In April, 2014, Harold Nims, D.O. performed a consultative examination at the request of ALJ Herman, noting Plaintiff's report of five reconstructive surgeries since the July, 2012 removal of the left breast (Tr. 577). Plaintiff reported the symptoms of chronic, radiating neck pain, numbness of the right hand, and muscle spasms (Tr. 577). She rated her neck pain at level eight to ten on a ten-point scale (Tr. 577). She reported symptom reduction with trigger point injections (Tr. 577). Plaintiff also reported lower extremity neuropathy, the recent discovery of a lump in the right breast, and an August, 2012 stroke (Tr. 578). She reported pain upon standing for more than short periods and sitting (Tr. 578). She did not have current medical insurance (Tr. 578).

Dr. Nims noted a steady gait and that Plaintiff appeared "stable" in standing, sitting, and supine positions (Tr. 579). He observed normal manipulative abilities and grip strength (Tr. 580). He noted that Plaintiff was unable to squat or bend (Tr. 581). He observed that Plaintiff experienced pain while sitting and standing (Tr. 582). He concluded that Plaintiff

seemed "capable of non-strenuous tasks without excessive walking or standing, adding that her ability to bend, stoop, lift, walk, crawl, squat, carry, travel, push, and pull appeared "to be at least mildly impaired . . ." (Tr. 581).

Dr. Nims also completed an assessment of Plaintiff's work-related activities, finding that Plaintiff could lift or carry up to 50 pounds on an occasional basis (Tr. 586). He found that Plaintiff was required a sit/stand option for position change every 30 minutes and was unable to walk for more than 20 minutes at a time (Tr. 587). He limited Plaintiff to sitting for four hours, standing for two, and walking for two in an eight-hour workday (Tr. 587). He restricted Plaintiff to frequent bilateral reaching and push/pulling (Tr. 588). He found that she could balance, stoop, kneel, crouch, crawl, and climb ladders or scaffolds on an occasional basis only (Tr. 589). He precluded work involving unprotected heights and temperature extremes with a limitation to occasional humidity and airborne pollutants (Tr. 590). He found that Plaintiff was limited to frequent use of moving mechanical parts and operating a motor vehicle (Tr. 590). He found no limitation in activities of daily living (Tr. 591).

### C.   Vocational Expert Testimony

Plaintiff's former work as a cashier was classified as unskilled and exertionally light; home care attendant, semiskilled/medium; and cook, skilled/medium[2] (Tr. 234). The ALJ

---

[2]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education, and work history:

> [U]nable to lift more than let's say 10 pounds occasionally, lesser weights more frequently. Stand and or walk for up to let's say two of eight hours in an eight hour workday. Sit for up to . . . six of eight hours in an eight hour workday. Further because of - - what includes particularly back pain along with the past post-breast cancer surgery, I'm going to add the following limitations. First of all postural activities such as bending, stooping, kneeling, crouching, crawling and the like, these should be performed only on an occasional basis. Further the individual should be allowed to alternate between sitting and standing for as long as - - provided that the tasks, the work gets done. And that the individual is not off task more than . . . 15 percent of the workday. Further because of headaches too, frequent headaches as testified to, I'm going to have the individual avoid working around hazards such as heights, dangerous machinery and the like. So under this hypothetical, first of all, can the individual perform any of her past work? (Tr. 52-53).

The VE stated that the above limitations would preclude Plaintiff's past relevant work, but would allow the hypothetical individual to perform the unskilled, sedentary work of an information clerk or greeter (4,000 positions in the regional economy); security monitor (1,500); and bench hand or packager (3,250) (Tr. 53). The VE testified that his answers were consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") except for his consideration of the sit/stand restriction which was based on his own professional experience (Tr. 53). The VE testified if the same individual were off task 20 percent or more of the workday, or, missed two to three days of work each month, all

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

competitive full time employment would be eliminated (Tr. 54).

### D. The ALJ's Decision

At Step One of the sequential analysis, the ALJ found that Plaintiff's work activity subsequent to the alleged onset of disability date of October 1, 2011 did not rise to the level of Substantial Gainful Activity (Tr. 18). Next, citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "degenerative disc disease, fibromyalgia, and neuropathy" but that none of the conditions met or medically equaled an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 18, 20). He found that Plaintiff experienced mild deficiencies in activities of daily living, no deficiency in social functioning and mild deficiencies in concentration, persistence, or pace (Tr. 19). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for sedentary work with the following limitations:

> [S]he can lift ten pounds occasionally and lesser weights frequently; stand/walk two of eight hours; sit six of eight hours; due to medical history which includes back pain, bending, stooping, crouching, crawling only occasional; she must be able to alternate standing and sitting; would not be off task more than 15 percent of the work day; and because of headaches cannot work around hazards such as unprotected heights (Tr. 20).

Citing the VE's job findings, he found that Plaintiff was unable to perform any of her former jobs but could work as a information clerk, monitor, and bench hand (Tr. 23).

The ALJ discounted Plaintiff's allegations of limitation. He noted that a consultative psychological examiner found only mild symptoms (Tr. 21). He noted that a physical consultative examination revealed a normal gait and full muscle strength (Tr. 22). The ALJ

-11-

found that Plaintiff's ability to perform exertionally light work between 20 and 25 hours a week until February, 2014 undermined her claim of disability (Tr. 22).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less than a preponderance.   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).  The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

# IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

# V. ANALYSIS

## A. The Credibility Determination

In her first argument, Plaintiff disputes the ALJ's finding that her allegations of limitation were not credible. *Plaintiff's Brief,* 12-17 (*citing* Tr. 20-22); *Docket #24*; Pg. ID 682. She contends that while the ALJ provided a discussion of the objective medical evidence, he failed to consider "other" evidence supporting her alleged limitations as

required by 20 C.F.R. 404.1529(c)(3). *Id.* at 14. She assigns error to the ALJ's purported

adoption of Dr. Nims' consultative findings, noting that the RFC does not include all of the

limitations found by the consultative source. *Id.* at 15. She also faults the ALJ for

concluding that her work activity subsequent to the alleged onset of disability undermined

her claims of limitation. *Id.* at 15-16.

## 1. Basic Principles

The credibility determination, guided in the current case by SSR 96-7p, describes a

two-step process for evaluating symptoms.[3] "First, the adjudicator must consider whether

there is an underlying medically determinable physical or mental impairment ... that can be

shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL

374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a

claimant's allegations regarding "the intensity, persistence, or functionally limiting effects

of pain or other symptoms are not substantiated by objective medical evidence," the

testimony must be evaluated "based on a consideration of the entire case record." *Id.*

20 C.F.R. § 404.1529(c)(3) lists the factors to be considered in addressing the second

---

[3]

In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). In the newer ruling, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3). Although Plaintiff cites SSR 16-3p, SSR 96-7p applies to the present determination, decided on July 31, 2014. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006)(accord 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations"). In any case, the "regulatory language" forming the crux of Plaintiff's argument remains the same. *See* § 404.1529(c)(3).

prong of the credibility determination:  (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Plaintiff's argument that the ALJ did not consider the entire case record in making the credibility determination does not provide grounds for remand.  The ALJ acknowledged Plaintiff's claim that she frequently left her part-time work shift early due to pain (Tr. 20). He observed that she currently took only over-the-counter pain medication since losing her medical insurance in November, 2013 and underwent physical therapy in March, 2013 (Tr. 20-21).  He noted her report of right-sided headaches, lower extremity numbness, and an August, 2012 stroke (Tr. 21).  The ALJ's discussion of Plaintiff's allegations of limitation in regular activities, treatment history, and medication sufficiently addresses the second prong of SSR 96-7p.

However, the ALJ's actual rationale for the credibility determination in which he accorded "great weight" to Dr. Nims' consultative findings is problematic (Tr. 22).  While Dr. Nims observed that Plaintiff was unable to squat or bend (Tr. 581-582), the RFC included the ability to bend on an occasional (up to one third of the workday) basis (Tr. 20).  Likewise,

while Dr. Nims observed that sitting was "painful" and that she could sit for a total of four hours in an eight-hour workday (Tr. 587), the RFC allows sitting for six hours (Tr. 20). The unexplained discrepancy is of particular concern given that sedentary work generally requires sitting for six hours. SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996). "If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded."

On a related note, while Dr. Nims found that Plaintiff required a position change from standing to sitting every 30 minutes (Tr. 587), the RFC includes only a generalized statement that Plaintiff "must be able to alternate standing and sitting" (Tr. 20). The finding that Plaintiff requires a sit/stand option, with nothing more, raises independent concerns. Aside from the fact that the unspecified sit/stand option does comport with Dr. Nims findings, SSR 96-9p states that the range of "unskilled sedentary work" is "eroded" by a need for a sit/stand option and that "[t]he extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand." *Id.* For this reason, "[t]he RFC assessment *must be specific* as to the frequency of the individual's need to alternate sitting and standing." (Emphasis added).

The ALJ's conclusion that Dr. Nims' findings were entitled to "great weight" stands at odds with the RFC reflecting a significantly lesser degree of limitation. To be sure, the ALJ was entitled to draw on evidence showing a lesser degree of limitation in crafting the RFC. 20 C.F.R. § 404.1527(d). However, the failure to make a bridge between the "great

weight" accorded Dr. Nims' findings and the noticeably less restricted RFC requires a remand for explanation. "This Court 'may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.'" *Gross v. CSS,* --- F.Supp.3d ----, 2017 WL 1151099, at *4 (E.D.Mich., March 28, 2017)(Patti, M.J.)(*citing Pollaccia v. CSS,* 2011 WL 281044, *6 (E.D. Mich. Jan. 6, 2011)). It is unclear whether the ALJ deliberately refrained from adopting a number of Dr. Nims' findings or simply misread the consultative physician's findings.

The remainder of the ALJ's rationale for the credibility determination is also problematic. The ALJ noted that "[t]he objective medical findings do not support the extreme limitations on walking, and standing to which the claimant testified and her ability to do light work for twenty to twenty five hours a [week] also does not support the extensive limitations that she alleges" (Tr. 22). However, his implied finding that Plaintiff was capable of at least part-time work on a steady basis is undermined by her testimony that she often left work before the end of her shift due to back pain or headaches (Tr. 33-34).

It is true that the ability to work on even a part-time basis can be used to support a finding that a claimant is capable of full-time work. *Herron v. Commissioner of Social Security,* 2016 WL 8115406, at *8 (E.D.Mich. July 6, 2016). Further, the ALJ recognized elsewhere in his determination that the part-time work did not constitute substantial gainful activity (Tr. 18). Nonetheless, the ALJ's reliance on the work activity to discredit Plaintiff's

credibility requires a remand for further review. The part-time work, as described by Plaintiff, suggests that she was able to continue working due only to the accommodations of her employers. Whether Plaintiff's work activity constituted "accommodated" work is pertinent to the ALJ's credibility determination.[4] *See* 20 C.F.R. § 404.1573(c) ("If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity"). Among the factors to be considered in determining whether the work is accommodated includes the ability "to work irregular hours or take frequent rest periods." § 404.1573(c). Standing alone, Plaintiff's testimony that she was allowed to leave work early due to her medical condition meets at least one prong of the "accommodated work" test.

Notwithstanding the deference customarily accorded an ALJ's credibility determination, *see Cruse v. CSS,* 502 F.3d 532, 542 (6th Cir. 2007), the credibility determination requires a remand for further fact-finding.

### B. The RFC

Plaintiff also takes issue with the RFC composed by the ALJ. *Plaintiff's Brief* at 17-22. She argues that although the ALJ claimed to have adopted Dr. Rousseau's psychological findings and Dr. Nims' assessment of the physical conditions, the RFC does not fully reflect

---

[4]Although the accommodated work inquiry is generally applicable to determining whether a claimant is capable of performing her past relevant work, the failure to consider whether the work activity was sheltered, prior to using the activity to discredit Plaintiff's claims, further undermines a weakly supported credibility determination.

the limitations found by either source. *Id.* at 18-19. Plaintiff argues further that the RFC does not specify at what intervals she required a change of position. *Id.* at 19. Finally, she contends that the ALJ failed to provide an adequate rationale for the RFC. *Id.* at 21-22.

As discussed in Section **A.**, the failure to reconcile Dr. Nims' findings with the RFC and the lack of specificity in the sit/stand option provide grounds for remand. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts," including objective findings, non-medical evidence, and activities of daily living. SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996). At a minimum, the ALJ must "'articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. CSS*, 30 Fed.Appx. 542, 547–548, 2002 WL 343402, *5 (6th Cir. March 4, 2002)(*citing Bencivengo v. CSS*, 251 F.3d 153, slip op., 5 (Table)(3rd Cir. December 19, 2000))(punctuation added).

However, the ALJ did not err by finding that Plaintiff's psychological limitations were either mild or non-existent (Tr. 19). While Plaintiff argues that Dr. Rousseau's consultative findings imply some degree of work-related psychological limitation, the ALJ accorded "great weight" to both those findings and the non-examining findings of Dr. Smith who found mild limitation in activities of daily living, no limitation in social functioning, and mild limitation in concentration, persistence, or pace (Tr. 22, 63). Thus, the finding that the psychological conditions were non-severe is both well supported and (in contrast to the

physical RFC) well explained.

While a remand to the administrative level is warranted for the reasons set forth in Section **A**., I decline to recommend a remand for an award of benefits. A remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). In this case, a remand for benefits prior to the resolution of the unresolved factual issues would be premature. As such, I recommend a remand for further administrative proceedings consistent with the above analysis.

## VI. CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Docket #28] be DENIED and that Plaintiff's motion for summary judgment [Docket #24] be GRANTED to the extent that the case be remanded for further administrative proceedings.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 9, 2017

-21-

**CERTIFICATE OF SERVICE**

I hereby certify on June 9, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen